# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**ELLIOTT HOGAN (#106177)**                         **CIVIL ACTION**

**VERSUS**

**WARDEN HOWARD PRINCE, ET AL.**           **NO. 14-0138-SDD-RLB**

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on July 2, 2015.

                                              **RICHARD L. BOURGEOIS, JR.**
                                              **UNITED STATES MAGISTRATE JUDGE**

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

**ELLIOTT HOGAN (#106177)**                                      **CIVIL ACTION**

**VERSUS**

**WARDEN HOWARD PRINCE, ET AL.**                      **NO. 14-0138-SDD-RLB**

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter comes before the Court on the Motions to Dismiss of defendants James LeBlanc, Timothy Seals, Eric Hinyard, Willie Washington and Kurt Guerin (R. Docs. 15 and 32). These motions are opposed.

The *pro se* plaintiff, an inmate incarcerated at the Elayn Hunt Correctional Center ("EHCC"), St. Gabriel, Louisiana, filed this action pursuant to 42 U.S.C. § 1983 against Secretary James LeBlanc, Warden Howard Prince, Col. Timothy Seals, Lt. Col. Eric Hinyard, Capt. Willie Washington, and Ass't Warden Kurt Guerin, complaining that the defendants violated his constitutional rights in July, 2013, by placing him in isolation for two weeks in retaliation for having gone on a hunger strike.[1] The plaintiff also complains of the alleged unconstitutional conditions to which he was subjected in the referenced isolation cell.[2]

---

1. The listing of the named defendants includes their full and correct names (as determined by reference to subsequent pleadings filed herein) and also a defendant added pursuant to amendment of the Complaint by the plaintiff. *See* R. Docs. 20 and 27.

2. An attempt by the United States Marshal's Office to serve defendant Howard Prince at the offices of the Louisiana Department of Public Safety and Corrections has proven unsuccessful because the defendant has "retired" from employment with the Department. *See* R. Doc. 11. Pursuant to Rule 4(m) of the Federal Rules of Civil Procedure, the failure of a plaintiff to serve a defendant within 120 days of commencement of an action is cause for dismissal of that defendant from the proceeding. It is appropriate, therefore, that the plaintiff's claims asserted against Warden Howard Prince be dismissed, without prejudice, for failure of the plaintiff to

In the instant Motions, the defendants first seek dismissal on jurisdictional grounds, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, of the plaintiff's claim asserted against them in their official capacities for monetary damages.[3] In this regard, the defendants are correct that § 1983 does not provide a federal forum for a litigant who seeks monetary damages against either a state or its officials acting in their official capacities, specifically because these officials are not seen to be "persons" within the meaning of § 1983. *Will v. Michigan Department of State Police*, 491 U.S. 58, 71 (1989). In addition, in *Hafer v. Melo*, 502 U.S. 21 (1991), the United States Supreme Court addressed the distinction between official capacity and individual capacity lawsuits and made clear that a suit against a state official in an official capacity for monetary damages is treated as a suit against the state and is therefore barred by the Eleventh Amendment. *Id.* at 25. Accordingly, the plaintiff's claim asserted against the defendants in their official capacities for monetary damages is subject to dismissal. In contrast, the plaintiff's claim for monetary damages asserted against the defendants in their individual capacities remains viable because a claim against a state official in an individual capacity, seeking to impose liability for actions taken under color of state law, is not treated as a suit against the state. *Id.* at 29.

Turning to the plaintiff's claims that are not subject to dismissal on the basis of Eleventh Amendment immunity, the defendants next assert, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, that the plaintiff has failed to state a claim upon which relief may be granted.

---

timely effect service upon this defendant.

3. It is unclear from the plaintiff's Complaint whether he is suing the defendants in their official and/or their individual capacities. The Court, however, interprets the pleadings of *pro se* petitioners liberally, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972). Accordingly, the Court interprets the plaintiff's Complaint as naming the defendants in both capacities.

In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court clarified the standard of pleading that a plaintiff must meet in order to survive a motion to dismiss pursuant to Rule 12(b)(6). Specifically, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, *supra*, at 555. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, *supra*, 556 U.S. at 678, *quoting Bell Atlantic Corp. v. Twombly*, *supra*. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* It follows that, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Id.* at 679. "Where a Complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* at 678 (internal quotation marks omitted).

On a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court "must accept as true all of the factual allegations contained in the Complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Further, "[a] document filed *pro se* is 'to be liberally construed' ... and 'a *pro se* Complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Id.* (citation omitted). Notwithstanding, the court need not accept "a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or "naked assertions [of unlawful conduct] devoid of further factual enhancement." *Ashcroft v. Iqbal*, *supra*, 556 U.S. at 678 (internal quotation marks omitted).

In his Complaint, as amended, the plaintiff alleges that on July 13, 2013, defendant Hinyard visited the plaintiff's cell and inquired whether the plaintiff was beginning a hunger strike. When the plaintiff responded in the affirmative, defendant Hinyard ordered the plaintiff to pack his belongings and ordered the plaintiff transferred to an "isolation tank." Upon the plaintiff's arrival at the isolation cell, defendant Hinyard gave instructions that both outer doors to the isolation cell should remain closed at all times. According to the plaintiff, this action was undertaken in retaliation for the referenced hunger strike. Although the plaintiff complained to defendant Hinyard about the extreme heat in the isolation cell, the lack of air circulation and the inadequate ventilation system, the defendant ignored these complaints. The plaintiff also notified defendant Hinyard that the plaintiff had a "heat precaution duty status" because of prescribed medications and that the extreme heat could endanger the plaintiff's life or health. According to the plaintiff, defendant Hinyard indicated that he didn't care about the plaintiff's duty status and that he was subjecting the plaintiff to the referenced conditions so as to induce the plaintiff to discontinue the hunger strike. The plaintiff alleges that over the course of the next two weeks, he spoke repeatedly to defendants Hinyard, Seals, Washington and Guerin, but the defendants refused his requests to have the outer door to the isolation cell remain open. The plaintiff asserts that, as a result of the extreme heat, he became ill and had to be admitted to the skilled nursing facility at the prison infirmary.

In addressing the substance of the plaintiff's claims, the defendants first assert that the plaintiff has failed to adequately state a claim relative to defendant James LeBlanc. In this regard, in order for a prison official to be found liable under § 1983, the official must have been personally and directly involved in conduct causing an alleged deprivation of an inmate's constitutional rights or there must be a causal connection between the actions of the official and

the constitutional violation sought to be redressed.  *Lozano v. Smith*, 718 F.2d 756, 768 (5th Cir. 1983).  Any allegation that a named defendant is responsible for the actions of subordinate officers or co-employees under a theory of vicarious responsibility or *respondeat superior* is alone insufficient to state a claim under § 1983.  *See Ashcroft v. Iqbal*, *supra*, 556 U.S. at 676 (2009), *citing Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978).  *See also Bell v. Livingston*, 356 Fed. Appx. 715, 716-17 (5th Cir. 2009) (recognizing that "[a] supervisor may not be held liable for a civil rights violation under any theory of *respondeat superior* or vicarious liability").  Further, in the absence of direct personal participation by a supervisory official in an alleged constitutional violation, an inmate plaintiff must allege that the deprivation of his constitutional rights has occurred as a result of a subordinate's implementation of the supervisor's affirmative wrongful policies or as a result of a breach by the supervisor of an affirmative duty specially imposed by state law.  *Lozano v. Smith*, *supra*, 718 F.2d at 768.

Applying the foregoing standard in connection with the plaintiff's claims, it appears that the plaintiff has failed to sufficiently allege that defendant LeBlanc has undertaken any action which may be characterized as a violation of the plaintiff's constitutional rights.  Specifically, the plaintiff makes no factual allegation that this supervisory official had any personal involvement in the decision to re-assign the plaintiff to an isolation cell in July, 2013, nor is there any suggestion that defendant LeBlanc was personally aware of the conditions to which the plaintiff was allegedly subjected at that time.  Instead, the only factual allegation provided relative to defendant LeBlanc is that the defendant is the Secretary of the Louisiana Department of Public Safety and Corrections and is "legully responsible for the overall opperation of the Department of Correction and each institutional under it's jurisdiction."  This allegation is not sufficient to establish any liability for the plaintiff's treatment during the referenced two-week period.

Accordingly, in the absence of any allegation regarding the direct involvement of defendant LeBlanc in the plaintiff's care or treatment during the pertinent time period, the claim asserted against defendant LeBlanc is without legal or factual foundation, and defendant LeBlanc is entitled to judgment as a matter of law.[4]

The Court next addresses the assertion of the remaining defendants that they are entitled to qualified immunity in connection with the plaintiff's claims asserted herein. Specifically, the defendants contend that the plaintiff's allegations and evidentiary showing fail to show the existence of a genuine issue of disputed fact relative to their participation in any violation of the plaintiff's constitutional rights.

The qualified immunity defense is a familiar one and, employing a two-step process, operates to protect public officials who are performing discretionary tasks. *Huff v. Crites*, 473 Fed. Appx. 398 (5th Cir. 2012). As enunciated in *Saucier v. Katz*, 533 U.S. 194 (2001), the first step in the analysis is to consider whether, taking the facts as alleged in the light most favorable to the plaintiff, the defendants' conduct violated the plaintiff's constitutional rights. *Id.* at 201. Second, the district court looks to whether the rights allegedly violated were clearly established at the time that the violation occurred. *Id.* This inquiry, the Court stated, is undertaken in light of the specific context of the case, not as a broad, general proposition. *Id.* The relevant, dispositive

---

4. In his opposition to the defendants' motions to dismiss, the plaintiff asserts that defendant LeBlanc failed to implement a "proper policy" for the treatment of inmates on hunger strikes and failed to adequately investigate the plaintiff's grievance filed in connection with his placement in the isolation cell. These supplemental allegations do not alter the Court's conclusion relative to this defendant. Specifically, the plaintiff's assertion regarding the implementation of a "proper policy" is conclusory and does not provide a basis for liability. And with regard to the plaintiff's assertion that defendant LeBlanc failed to properly investigate the plaintiff's administrative grievance, the law is clear that inmates have no constitutional right to have their grievances investigated or favorably resolved. *See Geiger v. Jowers*, 404 F.3d 371, 373-74 (5th Cir. 2005).

inquiry in determining whether a constitutional right was clearly established is whether it would have been clear to a reasonable state official that his conduct was unlawful in the situation which he confronted. *Id.* at 202. The assertion of the qualified immunity defense alters the summary judgment burden of proof. *Michalik v. Hermann*, 422 F.3d 252, 262 (5th Cir. 2005). Once a defendant pleads qualified immunity, the burden shifts to the plaintiff, who "must rebut the defense by establishing that the official's allegedly wrongful conduct violated clearly established law and that genuine issues of material fact exist regarding the reasonableness of the official's conduct." *Gates v. Texas Department of Protective and Regulatory Services*, 537 F.3d 404, 419 (5th Cir. 2008), *citing Michalik v. Hermann, supra*, 422 F.3d at 262.[5]

Undertaking the qualified immunity analysis with respect to the plaintiff's claims, the Court finds that the defendants' motions should be granted in part and denied in part. Specifically, whereas the Court concludes that the plaintiff has failed to state a viable constitutional claim of retaliation against the defendants, he has adequately stated a potential constitutional claim in connection with the conditions to which he was allegedly subjected while confined in an isolation cell for two weeks in July, 2013.

With regard to the plaintiff's claim of retaliation, the law is clear that the taking of action against an inmate in retaliation for the inmate's exercise of his constitutional rights may itself amount to a violation of the inmate's constitutional rights. *Woods v. Smith*, 60 F.3d 1161, 1165 (5th Cir. 1995). Claims of retaliation by prison inmates, however, are regarded with skepticism, lest the federal courts potentially embroil themselves in every adverse action that occurs within a

---

5. The United States Supreme Court has held that rigid chronological adherence to the *Saucier* two-step methodology is not mandatory. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Although the *Saucier* methodology will be "often beneficial", the Court in *Pearson* leaves to the lower courts discretion as to the order in which they may wish to address the two prongs of the qualified immunity analysis. *Id.*

penal institution. *Id.* at 1166. Accordingly, to prevail on a claim of retaliation, a prisoner must be able to establish (1) that he was exercising or attempting to exercise a specific constitutional right, (2) that the defendant(s) intentionally retaliated against the prisoner for the exercise of that right, (3) that an adverse retaliatory action, greater than *de minimis*, was undertaken against the prisoner by the defendant, and (4) that there is causation, *i.e.*, that but for the retaliatory motive, the adverse action would not have occurred. *Morris v. Powell*, 449 F.3d 682, 684 (5th Cir. 2006). *See also Hart v. Hairston*, 343 F.3d 762, 764 (5th Cir. 2003); *Jones v. Greninger*, 188 F.3d 322, 324-25 (5th Cir. 1999). If an inmate is unable to point to the exercise of a specific constitutional right, his claim will fail as a matter of law. *See Tighe v. Wall*, 100 F.3d 41 (5th Cir. 1996) (dismissing an inmate's claim for failure to demonstrate the exercise of a specific constitutional right); *Woods v. Smith, supra*, 60 F.3d at 1166 (observing that, "[t]o state a claim of retaliation an inmate must allege the violation of a specific constitutional right"). Further, the inmate must allege more than a mere personal belief that he is a victim of retaliation. *Jones v. Greninger, supra,* 188 F.3d at 325; *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir. 1997). Finally, to demonstrate the requisite retaliatory intent on the part of a defendant, the inmate must produce direct evidence of retaliatory motivation or allege a chronology of events from which retaliation may plausibly by inferred. *Woods v. Smith, supra,* 60 F.3d at 1166.

In the instant case, the plaintiff's claim of retaliation fails as a matter of law. Whereas the plaintiff complains that defendant Hinyard retaliated against the plaintiff in response to the plaintiff's hunger strike, this assertion, even if true, does not sufficiently identify the exercise of a specific constitutional right by the plaintiff, the exercise of which caused the defendant to take action against the plaintiff. In this regard, it appears that under certain circumstances, participation in a hunger strike may be a constitutionally protected activity under the First

Amendment to the United States Constitution, specifically where such participation is intended to convey a particularized message. *See Texas v. Johnson*, 491 U.S. 397, 404 (1989); *Stefanoff v. Hays County, Texas*, 154 F.3d 523, 527 (5th Cir. 1998). However, as long as there are other reasonable and effective means of communication available, and there is no discrimination based upon the content of the communication, prison officials are accorded latitude in fashioning reasonable restrictions on the time, place and manner of communications by inmates. *See Stefanoff v. Hays County, Texas, supra,* at 527, *citing Pell v. Procunier*, 417 U.S. 817, 826 (1974). In the instant case, the plaintiff has not alleged that he was trying to convey any particular message by going on a hunger strike, and he does allege, in any event, that he attempted to communicate any message to defendant Hinyard. To the contrary, all that the plaintiff alleges is that he simply answered affirmatively when asked by defendant Hinyard on July 13, 2013, whether the plaintiff was participating in a hunger strike. Accordingly, this assertion does not clearly implicate the exercise of any specific constitutional right and so does not support a claim for retaliation before this Court. *See Lee v. Burke*, 2007 WL 4608730, *1 (W.D. La. Dec. 11, 2007) (dismissing an inmate's claim or retaliation in response to a hunger strike where he did not allege "that he was trying to convey any particular message whatever"). Nor does the plaintiff allege that other means of communication were not available to him to convey the intended message. To the contrary, the Court recognizes that there is a well-established grievance procedure available to inmates at EHCC, pursuant to which inmates are permitted to communicate their complaints to prison officials and afterward to personnel at the Louisiana Department of Corrections. Inmates are further authorized to seek judicial review before the courts of the State of Louisiana upon exhaustion of administrative remedies and may even proceed thereafter before this Court to seek vindication of their constitutional rights.

Accordingly, on the facts alleged, the defendants are entitled to judgment as a matter of law in connection with the plaintiff's retaliation claim.

Notwithstanding the foregoing, the plaintiff also asserts that defendant Hinyard violated the plaintiff's constitutional rights by assigning the plaintiff to an enclosed isolation cell in the mid-Summer of 2013, with instructions that both the inner and outer doors of the cell remain closed at all times, restricting the circulation of air and exacerbating the heat in the cell. The plaintiff further asserts that he complained thereafter directly to defendant Hinyard and to the remaining defendants over the course of the next two weeks about the extreme heat, lack of air circulation, and inadequate ventilation in the isolation cell, requesting that at least the outer door to the cell be opened. The plaintiff also informed the defendants that he had a "heat precaution duty status" and that he was on medication that subjected him to greater health risk from exposure to the extreme heat. According to the plaintiff, the defendants refused the plaintiff's request and instead responded that they did not care about his duty status and that they were trying to break the plaintiff's will by exposing him to "hell[ish]" conditions. The plaintiff further asserts that he thereafter became so ill that he was admitted to the prison infirmary. This claim arises under the Eighth Amendment to the United States Constitution and its prohibition against cruel and unusual punishment, including the unnecessary and wanton infliction of pain. *Wilson v. Seiter*, 501 U.S. 294, 297 (1991), *citing Estelle v. Gamble*, 429 U.S. 97, 104 (1976).

The prohibition against cruel and unusual punishment mandates that prisoners be afforded humane conditions of confinement and that they receive adequate food, shelter, clothing and medical care. *Herman v. Holiday*, 238 F.3d 660, 664 (5th Cir. 2001). *See also Harper v. Showers*, 174 F.3d 716, 719 (5th Cir. 1999) (recognizing that "[t]he Constitution does not mandate comfortable prisons ... but neither does it permit inhumane ones"). A constitutional

violation occurs when two requirements are met.  First, there is the objective requirement that the condition "must be so serious as to 'deprive prisoners of the minimal civilized measure of life's necessities,' as when it denies the prisoner some basic human need." *Harris v. Angelina County, Texas*, 31 F.3d 331, 334 (5th Cir. 1994), *citing Wilson v. Seiter*, *supra,* 501 U.S. at 304.  Second, under a subjective standard, the Court must determine that the prison officials responsible for the deprivation have been "deliberately indifferent to inmate health or safety." *Farmer v. Brennan,* 511 U.S. 825, 837 (1994); *Woods v. Edwards*, 51 F.3d 577, 581 (5th Cir. 1995).  The Supreme Court has made clear that the standards against which a court measures prison conditions are "the evolving standards of decency that mark the progress of a maturing society." *Estelle v. Gamble, supra, 429 U.S. at 102*.  In applying this standard, the determinative question is whether a defendant prison official subjectively knew that an inmate claimant faced a substantial risk of serious harm, yet disregarded that risk by failing to take reasonable steps to abate it.  *Id.*  Specifically, the prison official must be found to have been personally aware of facts from which an inference could be drawn that a substantial risk of serious harm existed, and the official must also be found to have drawn the inference.  *Id.* at 837.  While some conditions of confinement may establish an Eighth Amendment violation "in combination," when each would not do so alone, this will occur only when those conditions have a mutually enforcing effect that produces the deprivation of a single, identifiable human need.  Nothing so amorphous as "overall conditions" can rise to the level of cruel and unusual punishment when no specific deprivation of a single human need exists.  *Wilson v. Seiter, supra*, 501 U.S. at 305.  Conclusory allegations, however, are not sufficient, and a plaintiff must allege facts to support what are otherwise broad and conclusory allegations of wrongdoing.  *See Rougley v. GEO Group*, 2011 WL 7796488, *3 (W.D. La. Nov. 7, 2011).

Applying the foregoing standard, the Court finds, at least at this juncture, that the plaintiff's allegations are sufficient to state a claim that his constitutional rights have been violated by exposure to unconstitutional conditions of confinement in the form of extreme heat that placed his life and health at risk and that allegedly caused him actual harm. It is now well-settled that exposure to extreme heat is actionable under certain circumstances. *See Blackmon v. Garza*, 484 Fed. Appx. 866, 870-72 (5th Cir. 2012) (reversing a grant of judgment as a matter of law in favor of the defendants upon a finding that the plaintiff's evidence regarding heat indices and the alleged aggravation of his medical condition was potentially sufficient to support a verdict in his favor); *Valigura v. Mendoza*, 265 Fed. Appx. 232, 235-36 (5th Cir. 2008) (upholding the denial of a motion for summary judgment based upon qualified immunity where the plaintiff presented evidence to support a potential Eighth Amendment violation, including exposure to temperatures "above the eighties and into the hundreds"); *Gates v. Cook*, 376 F.3d 323, 339 (5th Cir. 2004) (upholding a grant of injunctive relief to inmates where the inmates were not provided with adequate remedial measures "when the heat index [was] 90 or above"); *Ball v. LeBlanc*, 988 F. Supp. 2d 639, 662 (M.D. La. 2013) (granting injunctive relief to inmates confined on death row at the Louisiana State Penitentiary and directing that a plan be formulated "to reduce and maintain the heat index in the Angola death row tiers at or below 88 degrees Fahrenheit"). Further, whereas conclusory claims of exposure to excessive heat are not actionable, *see, e.g., Johnson v. Texas Board of Criminal Justice*, 281 Fed. Appx. 319, 321 (5th Cir. 2008) (upholding a dismissal, as frivolous, of an inmate claims where "he did not allege that he suffered from any heat-related injuries despite being subjected to these conditions numerous times"), courts that have recently addressed this issue have concluded that a Rule 12(b)(6) dismissal is not appropriate where the plaintiff has adequately alleged that he was exposed to

extreme heat that resulted in actual injury and that the defendants were aware of both the conditions and that the inmate plaintiff's medical needs made him more vulnerable to those conditions. *See Martone v. Livingston*, 2014 WL 3534696, *8 (S.D. Tex. July 16, 2014) (finding that the plaintiff's allegations were sufficient to defeat the defendants' assertion of qualified immunity and that discovery was warranted where the plaintiff alleged that a deceased inmate was exposed to extreme heat, that his medical needs made him more susceptible to those conditions, and that the defendants had actual knowledge of the substantial risk of harm); *Hinojosa v. Livingston*, 2014 WL 1276199, *6 (S.D. Tex. March 27, 2014) (same); *Webb v. Livingston*, 2014 WL 1049983, *7-8 (E.D. Tex. March 17, 2014) (same). This Court similarly concludes in the instant case that the plaintiff has adequately stated a claim of the violation of his constitutional rights in connection with his allegations of exposure to excessive heat. *See Texada v. LeBlanc*, 2015 WL 3506686, *3 (M.D. La. June 3, 2015) (denying a 12(b)(6) motion to dismiss based on qualified immunity where the inmate plaintiff alleged that "he was confined to a cell in 100 degree temperatures with little ventilation and no fans or air flow"). Accordingly, the defendants' motion to dismiss should be denied in connection with this issue.[6]

## RECOMMENDATION

It is recommended that the plaintiff's claims asserted against defendant Howard Prince be dismissed for failure of the plaintiff to serve this defendant within 120 days as mandated by Fed.

---

6. In the instant motions, the defendants characterize the plaintiff's Complaint as also asserting a claim that the defendants subjected him to verbal abuse and harassment. Whereas the Court does not interpret the plaintiff's Complaint as making that claim, the Court finds, in any event, that such a claim would be subject to dismissal as being without constitutional foundation. Specifically, the law is well-settled that allegations of verbal abuse alone do not present claims under section 1983. "[M]ere threatening language and gestures of a custodial officer do not, even if true, amount to constitutional violations." *McFadden v. Lucas*, 713 F.2d 143, 146 (5th Cir. 1983); *Burnette v. Phelps*, 621 F. Supp. 1157, 1162 (M.D. La. 1985); *Johnson v. Glick*, 481 F.2d 1028, 1033 n.7 (2nd Cir. 1973). Accordingly, the plaintiff's allegations regarding verbal abuse do not rise to the level of a claim of constitutional dimension.

R. Civ. P. 4(m). It is further recommended that the Motions to Dismiss of the remaining defendants (R. Docs. 15 and 32) be granted in part, dismissing all of the plaintiff's claims asserted against defendant James LeBlanc, with prejudice, and dismissing the plaintiff's claims asserted against the remaining defendants except the plaintiff's claim that the defendants, in their individual capacities, violated the plaintiff's federal constitutional rights by subjecting him to unconstitutional conditions of confinement through exposure to excessive heat in an enclosed isolation cell in July, 2013, and that this matter be referred back to the Magistrate Judge for further proceedings.

Signed in Baton Rouge, Louisiana, on July 2, 2015.

                        **RICHARD L. BOURGEOIS, JR.**
                        **UNITED STATES MAGISTRATE JUDGE**